**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **COREY B. MCCLENDON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:23-cv-546 JSD** |
| | ) | |
| **CHRIS BREWER,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM AND ORDER

Corey B. McClendon ("Petitioner"), a Missouri state prisoner, pursues this habeas corpus proceeding under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Respondent Chris Brewer filed opposition to Petitioner's petition. [ECF No. 12] Petitioner filed a reply supporting his petition. [ECF No. 17]. For the following reasons, Petitioner's petition is denied.[2]

### I. Background

The State charged Petitioner as a prior and persistent offender, with two counts of forcible sodomy and one count of kidnapping of C.M. [ECF No. 12-2] The State presented the following evidence at trial: on December 28, 2011, between 4:00 and 4:30 p.m., fourteen-year-old C.M. was walking home from the library when Petitioner approached him. [ECF No. 12-1 at 248-249, 254-56, 281]. The two began talking, and Petitioner told C.M. to come with him. [*Id.* at 260-61] C.M.

[1] The Court substitutes as the Respondent Chris Brewer, the Warden of the Missouri Crossroads Correctional Center ("CCC") where Petitioner is presently incarcerated, in lieu of the person who was the Warden of the Missouri correctional institution having custody of Petitioner when he filed this habeas proceeding. *See* Federal Rule of Civil Procedure 25(d); Rule 2(a) of the Rules Governing Section 2254 cases in the United States District Court. The Court also notes that Catherine Hanaway, the Attorney General of Missouri, is a proper respondent because Petitioner has a future consecutive sentence. [ECF No. 12 at 1]

[2] The parties consented to the exercise of authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

was nervous because he wanted to get home on time but felt pressured to go with Petitioner because he was an adult. [*Id.* at 262] Petitioner led C.M. to a nearby church, and gave C.M. something to drink from a small bottle. [*Id.* at 264-65, 268-270]

Inside the church, Petitioner unzipped his pants and told C.M. he was going to show him what to do with a girl. [*Id.* at 270-271] C.M. told Petitioner "no" and that he had to leave. [*Id.* at 271] Petitioner positioned himself so that C.M. would have had to pass Petitioner to go down the stairs. [*Id.* at 272] C.M. was afraid but refused Petitioner's directive for C.M. to unbutton his pants. [*Id.* at 273] Petitioner unbuttoned C.M.'s pants and put his mouth on C.M.'s genitals. [*Id.* at 273-274] When C.M. yelled for help, Petitioner choked C.M. and told him to shut up or Petitioner would kill him. [*Id.* at 275] C.M. stopped yelling. [*Id.* at 276] C.M. testified it was difficult for him to breathe and he did not know if he was going to make it out alive. [*Id.* at 275, 286]

Petitioner rolled C.M. over on his stomach and penetrated C.M.'s anus with his penis. [*Id.* at 276-77] When Petitioner finished, he told C.M. to leave. [*Id.* at 277-79] C.M. ran to a police station and reported the incident. [*Id.* at 279-282] C.M. described the assailant as a black male, in his thirties, approximately 6 foot and 1 inches tall, with a slim to muscular build, and a slight mustache. [*Id.* at 310]

During a physical examination shortly after the incident, a doctor documented red, purplish abrasions on both sides of C.M.'s neck and a mark on his left buttock. [*Id.* at 353-363] The doctor also completed a sexual assault kit. [*Id.* at 365-366, 372]

A forensic scientist with the St. Louis County crime laboratory tested the rectal swabs collected during the examination, with all four swabs testing positive for seminal fluid. [*Id.* at 381-386] Margaret Walsh, another forensic scientist with the lab, tested the swabs for DNA, and developed sperm and non-sperm fractions from the swabs. [*Id.* at 404] The sperm fraction was a

partial male profile from a single source. [*Id.* at 404] Walsh ran the DNA profile from the rectal swabs through the Combined DNA Index System (CODIS), a national database of approximately 11 million DNA profiles maintained by the FBI. [*Id.* at 321, 407-08] The CODIS database located a match with a single person, Petitioner, an Iowa offender. [*Id.* at 409, 411] Walsh confirmed the DNA profile with the Iowa crime laboratory. [*Id.* at 409-410]

Detective Mark Leone with the City of Ferguson Police Department discovered an address for Petitioner approximately one mile from the church where the assault occurred. [*Id.* at 323-24] Detective Leone located Petitioner in Iowa and interviewed him. [*Id.* at 325] Petitioner acknowledged being in the Ferguson area in December 2011. [*Id.* at 327] Detective Leone described Petitioner as a thirty-eight-year-old black male, six feet tall, with an athletic build. [*Id.* at 329] Detective Leone presented C.M. with three photo lineups, two of which included Petitioner, and C.M. was unable to identify his assailant in the lineups. [*Id.* at 319-320, 322, 331-335]

Walsh developed a DNA profile from buccal swabs taken from Petitioner following his arrest. (*Id.* at 402-403) Walsh concluded Petitioner could not be excluded as the donor of the partial profile of the sperm fraction developed from the rectal swabs, meaning Petitioner's DNA profile was consistent with the partial profile of the sperm fraction. [*Id.* at 404]

Based upon a match of seven allele loci in the DNA profile, Walsh calculated a match frequency of one in seventy-six billion people. [*Id.* at 406, 448] This frequency was developed using "new" interpretation guidelines issued by the Scientific Working Group for DNA Analysis Methods (SWGDAM). [*Id.* at 466-467, 448] These guidelines allowed Walsh to consider alleles at specific loci even if they are under the typical interpretation threshold level if they come from a single-source sample. [*Id.* at 446-447] Walsh acknowledged that under the "old" guidelines she would have been allowed to consider a match at only one loci in determining match frequency,

and that the match frequency would have been "a lot lower." [*Id.* at 434-436, 446-48] However, even under the "old" guidelines Walsh could consider alleles at specific loci between the "analytical threshold" and the typical "interpretation threshold" to exclude people as a contributor to the sample. [*Id.* at 433-434] Walsh explained that the "new" SWGDAM guidelines were implemented in 2010 but that the St. Louis County crime laboratory had previously elected a "more conservative" approach in its statistical frequency analysis before adopting the SWGDAM's guidelines in 2013. [*Id.* at 453-54] Walsh testified that the St. Louis County crime laboratory's adoption of the "new" guidelines was "more in line" with SWGDAM's recommendations and was consistent with what "[a] lot of labs were [already] doing[.]" [*Id.* at 454]

Petitioner testified on his own behalf. Petitioner stated, among other things, that he was living in Berkeley, bordering Ferguson, in December 2011 and that his left hand was paralyzed from a gunshot wound. [*Id.* at 475-476, 484]

The jury found Petitioner guilty on all three counts. [ECF No. 12-2 at 67-69] The trial court sentenced Petitioner to concurrent sentences of life on the two sodomy charges and a consecutive sentence of ten years imprisonment on the kidnapping charge. [ECF No. 12-1 at 78-80]

Petitioner filed a direct appeal, and the Missouri Court of Appeals affirmed. [ECF Nos. 12-3, 12-4, 12-5, 12-6, 12-7, 12-8] Petitioner also filed a post-conviction motion pursuant to Missouri Supreme Court Rule 29.15. [ECF Nos. 12-9] The motion court denied Petitioner's claims after conducting an evidentiary hearing, and the Court of Appeals affirmed the motion court's decision.[3] [ECF Nos. 12-16, 12-17, 12-18, 12-19, 12-20] Petitioner now seeks habeas relief before this Court.

[3] Petitioner's appointed counsel filed an untimely amended post-conviction petition on Petitioner's behalf. [ECF No. 12-9] The post-conviction court considered the claims raised in the amended petition and denied them on the merits. [ECF No. 12-9] On appeal, the Missouri Court of Appeals for the Eastern District reversed and remanded the action to the motion court for a determination of whether post-conviction counsel's failure to file a timely amended motion constituted abandonment. [ECF Nos. 12-12, 12-13, 12-14, 12-15] On remand, the post-conviction court concluded counsel had abandoned Petitioner and permitted the untimely motion to be filed. [ECF No. 12-16] Upon

## II. Grounds for Relief

In the habeas petition, Petitioner asserts the following four grounds for relief:

(1) the State violated Petitioner's rights by presenting as evidence DNA test results that were "tamper[ed] with" to make it appear that the semen collected from the victim matched Petitioner's DNA (Ground One);

(2) Petitioner was "wrongfully convicted" because the victim was unable to pick Petitioner out of three lineups or identify him as the attacker at trial (Ground Two);

(3) the trial court erred in sentencing Petitioner as a prior and persistent offender because Petitioner was not previously charged with the same offenses (Ground Three); and

(4) the trial court erred by improperly instructing the jury on the charged offenses and by failing to instruct the jury on a lesser included offense (Ground Four).

Respondent counters that the Court should not grant Petitioner habeas relief because his claims are procedurally barred for failing to raise them in the State court proceedings and, alternatively, are without merit. In his reply, Petitioner reframes his claims as those of claims of actual innocence, newly discovered evidence, discovery violations, ineffective assistance of trial counsel, and that the judgment is void. [ECF No. 17]

## III. Discussion

Respondent contends the Court is procedurally barred from considering the merits of Petitioner's claims because he did not properly present these grounds to the State courts and has not demonstrated either cause or prejudice to excuse the default. Specifically, Respondent asserts that Petitioner's claims of State and trial court error are defaulted for failing to include the claims on appeal.

---

reconsideration, the post-conviction court again denied the claims raised in the amended petition on the merits. [ECF No. 12-16]

Before seeking federal habeas relief under § 2254, a petitioner must exhaust his state-court remedies. 28 U.S.C. § 2254 (b)(1)(A). To avoid procedural default, the petitioner must "fairly present" the claim to the state court before seeking federal habeas relief. *Morris v. Norris*, 83 F.3d 268, 270 (8th Cir. 1996); *Deck v. Jennings*, 978 F.3d 578, 581 (8th Cir. 2020). "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996) (internal citations omitted)). "If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted." *Barrett v. Acevedo*, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc).

A petitioner must present the claim to the state courts "in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009)). A state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). Similarly, any claim that should have been but was not presented in a post-conviction motion or in an appeal from a denial of a post-conviction motion is procedurally defaulted. *Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006). This Court may not consider the merits of a procedurally defaulted claim unless the petitioner shows either (1) cause and prejudice or (2) that a miscarriage of justice will occur if the Court fails to consider the grounds because the petitioner is actually innocent of the charge of which he was convicted. *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992); *Thomas v. Payne*, 960 F.3d 465, 471 (8th Cir. 2020).

In Ground One, Petitioner argues the State violated his rights because "the test results from the DNA analyst was…fixed to look as [though Petitioner's] DNA came back as a [partial match]." [ECF No. 1 at 5-6] In Ground Two, Petitioner asserts he was "wrongfully convicted" because the evidence was insufficient to convict him, in that the victim was unable to identify Petitioner as his attacker in multiple lineups and at trial. [ECF No. 1 at 7-8] In Ground Three, Petitioner claims the trial court erred in sentencing him as a prior and persistent offender because Petitioner's prior convictions had not been for the same charges. [ECF No. 1 at 8-9] In Ground Four, Petitioner contends the trial court erred in instructing the jury as to the charged offenses and for failing to instruct on "a lesser included offense." [ECF No. 1 at 10-11]

Petitioner did not raise any of these claims on appeal or in his post-conviction proceeding. Although Petitioner asserts that he raised Ground One in his post-conviction proceeding, this is incorrect. In Ground One, Petitioner argues the State violated his rights by "tamper[ing] with evidence[,]" specifically "the test results from the DNA analyst was…fixed to look as [though Petitioner's] DNA came back as a [partial match]." In his amended post-conviction motion, appointed counsel argued Petitioner's trial counsel was ineffective for failing to preserve certain statements made by Walsh, the State's witness regarding the DNA evidence, on the day of the deposition respecting how various interpretation standards would impact the estimated frequency of a partial DNA match. Because Petitioner's Ground One claim regarding evidence tampering and his post-conviction claim regarding ineffective assistance of counsel for failing to preserve certain out of court statements are neither the same factual grounds nor the same legal theories, Petitioner did not fairly present his current claim in Ground One to the state court. *See Wemark*, 322 F.3d at 1021 ("A claim has been fairly presented when a petitioner has properly raised the

'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition.")

Likewise, Petitioner did not raise Ground Two, Three, and Four on direct review and they are procedurally barred for that reason. [ECF No. 12-4, 12-5, 12-7] Petitioner cannot show "cause" for the default of these trial court claims based upon ineffective assistance of appellate counsel because he has not asserted claims of ineffective assistance of appellate counsel in state court for not raising the alleged trial error claims. *See Fields v. Roper*, 448 F. Supp. 2d 1113, 1117 (E.D. Mo. 2006) (citing *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000)) ("Because petitioner's ineffective assistance of counsel claims are themselves procedurally defaulted, they cannot serve as a basis for demonstrating 'cause' and avoiding the procedural bar with respect to the underlying claims."); *Piper v. State of S. Dakota*, No. 5:20-CV-05074-RAL, 2024 WL 1348502, at *48 (D.S.D. Mar. 29, 2024) ("Again, ineffective assistance of appellate counsel constitutes cause only if the prisoner either *properly* exhausted the ineffective assistance of appellate counsel claim in state court or can show cause and prejudice to excuse procedural default of the claim."). Further, appellate counsel is not ineffective for raising a particular claim unless the claim is plainly stronger than the claims that were raised. *See Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998) ("Because of this presumption and the reality that effective appellate advocacy often entails screening out weaker issues, the Sixth Amendment does not require that appellate counsel raise every colorable or non-frivolous issue on appeal."); *Piper*, 2024 WL 1348502, at *33; *Davila v. Davis*, 582 U.S. 521, 533 (2017). Thus, the Court finds that all of Petitioner's claims are procedurally defaulted and are denied.

Further, Petitioner must demonstrate either cause and prejudice or a miscarriage of justice due to actual innocence for the court to consider his procedurally defaulted claims. *Sawyer*, 505

U.S. at 338-39; *Thomas*, 960 F.3d at 471. Petitioner has not presented any basis to support a finding of cause and prejudice to excuse his procedural default.

In his reply, Petitioner claims he is actually innocent of the charges based on the victim's inability to identify him, and the prosecutor's alleged "coach[ing] of the victim" "so that the jury wouldn't pay attention to the fact that [the victim] stated that the petitioner was not his attacker." [ECF No. 17 at 3-5] Petitioner further asserts that he uncovered new evidence in the form of a document from "the DNA analyst to a Detective stating that she can make it look as though [Petitioner] is a match who admits that the testing from another said that [Petitioner] should be excluded and also she admits to taking the old test and applying them to the new analytical threshold." [ECF No. 17]

To successfully assert actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner must also demonstrate "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

Petitioner's claim of new documentary evidence suggesting the DNA analyst fabricated evidence is wholly unsupported. With respect to Petitioner's remaining claims, they do not support a claim of actual innocence. Neither the victim's inability to identify Petitioner as the assailant nor Walsh's application of the "new" DNA interpretation guidelines demonstrates that Petitioner is actually innocent of the crimes. Petitioner's assertion that the prosecutor allegedly coached the victim at trial "so that the jury wouldn't pay attention to the fact that [the victim] stated that the petitioner was not his attacker" is ungrounded in fact. The victim did not testify that Petitioner was

not the assailant and the victim's inability to identify the assailant is not the same as the victim exonerating Petitioner.

Further, Petitioner has failed to establish that no reasonable juror would have convicted him in light of this allegedly new evidence. Petitioner's focus on Walsh's match frequency analysis does not negate either: (1) Walsh's finding that Petitioner could not be excluded as the donor of the partial profile of the sperm fraction recovered from the sexual assault kit or (2) that Petitioner was the only CODIS match, a database of approximately 11 million profiles, to the DNA profile of the sperm fraction recovered from the sexual assault kit. Because the Court finds Petitioner has failed to demonstrate that he meets either exception, Petitioner's grounds for relief are procedurally defaulted.

Even if these claims were not procedurally defaulted, they also fail on the merits. In Ground One, Petitioner asserts that the DNA results were tampered with to make it look as though his semen was a match. DNA expert Walsh testified at trial that the semen in the rape kit matched Petitioner and occurred at a frequency of one in seventy-six billion in the African-American population. [ECF No. 12-1 at 392-459] Although Walsh admitted that if an older method of calculation had been used then the frequency in the population would have been higher. *Id*. However, Petitioner has not shown that using the modern and generally accepted method for calculating the frequency of the DNA in the population is "tampering" nor has he shown any basis for federal habeas relief under 28 U.S.C. § 2254(d).[4] Thus, Petitioner presents no viable basis for federal habeas relief on the merits.

---

[4] 28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

Also, Ground Two is without merit given that the victim testified as to the elements of the offense and the DNA from the rape kit matched Petitioner. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Further, Petitioner misrepresents the victim's testimony because he never testified that Petitioner was not the attacker, just that he could not be sure. [ECF No. 12-1 at 295-96] The victim, however, testified as to his attacker's height, age, build, and race, which matched Petitioner. [ECF No. 12-1 at 329-30] As Petitioner has failed to show that the underlying decision was contrary to federal law or an unreasonable determination of the facts, the Court denies relief as to Ground Two. *See* 28 U.S.C. § 2254(d).

Similarly, Ground Three, where Petitioner alleges he was wrongfully sentenced as a prior and persistent offender under Mo. Rev. Stat. § 558.016, does not raise a federal issue for this Court's review. Section 558.016 does not require that the earlier felonies forming the basis for a "prior and persistent offender" be the same crime as the current offense, as asserted by Petitioner. The State offered evidence at trial that Petitioner was a prior and persistent offender and his counsel had no objection to the Court's finding. [ECF No. 12-1 at 23] Petitioner has shown no basis for federal habeas relief in Ground Three. 28 U.S.C. § 2254(d).

As to Ground Four, the Court finds that the state court did not erroneously fail to instruct the jury regarding a lesser included offense or the offense for which Petitioner was convicted. The jury instructions and verdicts are included in the record. [ECF No.12-2 at 51-66] Petitioner does not provide any specific errors with the instructions presented, let alone any defects that would

---

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

present a federal habeas issue. *See Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) ("[H]abeas petitioners cannot preserve otherwise unexhausted, specific claims of ineffective assistance merely by arguing that their lawyers were ineffective in a general and unspecified way."); *Ellis v. Raemisch*, 872 F.3d 1064, 1091 (10th Cir. 2017) ("[I]t is not enough that a prisoner has generally presented a *Strickland* claim of ineffective assistance to the appropriate state court; the prisoner must have presented—and thereby exhausted—the substance of the exact ground of ineffectiveness (i.e., deficient attorney conduct) upon which the prisoner later seeks habeas relief in federal court."); *Flieger v. Delo*, 16 F.3d 878, 885 (8th Cir. 1994) ("A habeas petitioner who asserts only broadly in his state petition for relief that his counsel has been ineffective has not immunized his federal habeas claim's specific variations from the effects of the state's procedural requirements. Nor has a petitioner who presents to the state courts a broad claim of ineffectiveness as well as some specific ineffectiveness claims properly presented all conceivable specific variations for purposes of federal habeas review." (internal citations omitted)); *see also Piper,* 2024 WL 1348502, at *48 (same). Likewise, Petitioner has not identified any federal constitutional right to offer a lesser included offense instruction in a noncapital case. *See Dickerson v. Dormire*, 2 F. App'x 695, 695–96 (8th Cir. 2001) (citing *Pitts v. Lockhart,* 911 F.2d 109, 112 (8th Cir.1990) ("the failure to give a lesser included offense instruction in a noncapital case rarely, if ever, presents a constitutional question"). The Court holds that Ground Four and the state courts' action in this case was not contrary to, or an unreasonable application of, clearly established Federal law, and provides no basis for habeas relief. 28 U .S.C. § 2254(d).

## IV. Certificate of Appealability

A final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court cannot be appealed unless the judge issues a certificate of

appealability ("COA"). 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). A judge may issue a COA under Section 2253(c) only if a petitioner has made "a substantial showing of the denial of a constitutional right." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This standard requires a petitioner to demonstrate, with respect to claims resolved on the merits, that "reasonable jurists would find the ... court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that Petitioner has not made a substantial showing of the denial of any constitutional right. Accordingly, the Court will not issue a certificate of appealability with respect to any aspect of the denial of Petitioner's petition.

## V. Conclusion

After careful consideration,

**IT IS HEREBY ORDERED** that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 [ECF No. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall reflect on the docket that Chris Brewer, Warden of the Missouri Crossroads Correctional Center, is the proper defendant pursuant to Fed. R. Civ. P. 25(d).

**IT IS FINALLY ORDERED** that any motion by Petitioner for a certificate of appealability will be **DENIED.**

A separate judgment in accordance with this Memorandum and Order is entered this same date.

JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of August, 2026.